UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


RONALD S. COHEN, Acting Regional Director of
the First Region of the National Labor Relations
Board, for and on behalf of the NATIONAL
LABOR RELATIONS BOARD
         Petitioner,

     v.                                               C.A. No. 10-126-ML

BRADFORD PRINTING & FINISHING, LLC,
         Respondent.


## MEMORANDUM AND ORDER

      This matter is before the Court on Ronald S. Cohen, Acting Regional Director of the First

Region of the National Labor Relations Board's ("Petitioner") Petition for an Injunction under

Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) (the "Act").  Petitioner

requests an injunction, prohibiting Bradford Printing & Finishing, LLC, ("Respondent") from

engaging in unfair labor practices.  For the reasons set forth below, Petitioner's Motion for an

Injunction is GRANTED.

## I.   BACKGROUND

      Bradford Dyeing Association was a manufacturing company that closed down its facility

due to financial problems on or about November 24, 2008.[1]  Bradford Dyeing Association had a

---

[1] Petitioner filed a separate Motion to Try the Section 10(j) Injunction Petition on the Basis of the Administrative Record.  Respondent did not object to Petitioner's Motion so long as the record was supplemented by the parties' exceptions to Administrative Law Judge Green's findings and Nicholas Griseto's affidavit. Nicholas Griseto is the President and CEO of Respondent.  At a hearing before this Court on June 2, 2010, Petitioner agreed to Respondent's request.  The Court therefore bases its decision on the administrative record and supplemental papers, as agreed upon by the parties.

long-standing bargaining relationship with the New England Joint Board UNITE-HERE.  On December 22, 2008, nearly one month after Bradford Dyeing Association closed down its facility, Respondent entered into an agreement with Bradford Dyeing Association.  Under that agreement, Respondent leased Bradford Dyeing Association's facility and equipment. Respondent concedes that it has been operating Bradford Dyeing Association in "basically unchanged form" and has employed the majority of its production and maintenance employees.

## A.    The Charge

On August 17, 2009, UNITE-HERE  filed a Charge against Respondent as the successor employer to Bradford Dyeing Association.  The Second Amended Charge (the "Charge") alleges that Respondent has violated and continues to violate 29 U.S.C. § 158 (a)(1), (2), and (5).

The crux of Petitioner's allegation is that immediately after commencing operation in January 2009, Respondent refused to negotiate with UNITE-HERE.  Instead, the Guiding Coalition was formed at the instigation of Nicholas Griseto, the President, CEO, and sole owner of Respondent, when he solicited production employees and managers to join the Guiding Coalition. The stated purpose of the Guiding Coalition was to deal with wages, hours, and other terms of employment.

Specifically, Petitioner alleged in the Charge that Respondent violated the Act when it (1) posted a notice to employees with a purpose of soliciting employees to abandon support for UNITE-HERE; (2) interrogated employees as to their support for the Union; and (3) formed the Guiding Coalition, even though UNITE-HERE was the exclusive collective-bargaining representative of the unit employed by Bradford Dyeing Association.

2

### a. The Guiding Coalition

Petitioner alleged in the Charge that in January 2009, Respondent formed the Guiding Coalition to deal with wages, hours, and other terms and conditions of employment, even though UNITE-HERE was the exclusive collective-bargaining representative of the unit employed by Bradford Dyeing Association. Petitioner further alleged that at the orientation meeting for new employees held on January 5, 2009, Nicholas Griseto solicited production employees and managers to join the Guiding Coalition. The Guiding Coalition met once a month, and employees who attended were compensated for their time in attendance at the meetings.

On January 16, 2009, UNITE-HERE asserted that it was the majority representative and asked Respondent's counsel for such recognition. Respondent's counsel sent a letter to employees dated January 30, 2009, stating that he was assessing the situation and would notify them of his findings at a later date.

### b. February 4 Memo

Petitioner alleged that in early February 2009, Respondent posted a notice ("February Memo") to employees with the purpose of soliciting employees to abandon their support for the Union. Entitled "Message to Employees," this notice states that Respondent "believe[s] a union is not necessary given Bradford's new vision, culture change, and procedures." Admin. Rec. Exhibit 18. It goes on to state that

> If you desire to have a role in this decision, you must take immediate steps to make your opinions and views known to UNITE-HERE, the National Labor Relations Board in Boston and Bradford. It is Bradford Printing's position that your views and opinions are the most important on this issue. You alone should make the decision on whether UNITE-HERE becomes your union and bargaining agent for employees.

Id.

3

### c. Interrogation of Employees in February

Petitioner alleged in the Charge that in early February 2009, Respondent interrogated employees as to their support for the Union. Petitioner alleged that by requesting that employees take "immediate steps to make [their] opinions and views known" in the February Memo, Respondent unlawfully interrogated its employees. Id.

## B.   The Complaint and ALJ Green's Findings

The Second Amended Charge was referred to the Regional Director of First Region of the Board for investigation on December 28, 2009. After the parties presented evidence, the Acting Regional Director issued a Complaint and Notice of Hearing against Respondent on December 31, 2009. The Complaint alleges that Respondent was and is engaging in unfair labor practices in violation of Sections 8(a)(1), (2), and (5) of the Act.

On February 16, 2010, Administrative Law Judge Raymond P. Green presided over an expedited hearing on the Complaint.[2] On April 14, 2010, ALJ Green issued findings of fact and conclusions of law. ALJ Green concluded that (1) "by creating and maintaining the Guiding Coalition as a joint employee-management committee that was authorized to 'deal with' terms and conditions of employment, the Respondent dominated a labor organization in violation of Section[s] 8(a)(1) and (2) of the Act" and (2) "by withdrawing recognition from and refusing to bargain with the Union," Respondent violated Sections 8(a)(1) and (5) of the Act.

Based upon these findings, ALJ Green ordered that Respondent must cease dealing with the Guiding Coalition as a representative and recognize UNITE-HERE as the representative bargaining unit. ALJ Green also ordered that Respondent take affirmative steps by (1) upon

---

[2] At the time Petitioner filed this Motion, the Complaint was still pending before ALJ Green.

request, bargaining collectively with UNITE-HERE, and (2) posting at its facilities in Bradford, Rhode Island, copies of a notice attached to the ALJ Green's decision. The attached notice states that Respondent will not withdraw recognition from UNITE-HERE, will not deal with the Guiding Coalition, will not interfere with employees' rights, and will recognize the Union as the exclusive representative of the employees. Respondent was also ordered that "within 21 days after service by the Region," it must file with the Regional Director a "sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply."

**C.     The Parties' Exceptions to ALJ Greene's Findings**

On May 12, 2010, the General Counsel for the Board filed three limited exceptions to ALJ Green's findings, arguing that (1) the ALJ erred in failing to find that the February 4, 2009 Memo violated Section 8(a)(1) of the Act because Respondent posted it with a purpose to solicit employees to abandon support for the union; (2) the ALJ erred in failing to find that the February 4, 2009 Memo violated Section 8(a)(1) of the Act because it constituted Respondent's interrogation of employees as to their support for the Union; and (3) the ALJ erred in failing to conclude that Respondent's violations of Section 8(a)(1) of the Act constituted an alternative basis for the unlawful withdrawal of recognition for UNITE-HERE.

On that same date, Respondent filed four exceptions to the ALJ's Decision. First, Respondent objects to the ALJ's factual findings on lines 40-45. Respondent argues that the ALJ mischaracterized John Parker's testimony that he drew up a petition and solicited signatures in support of the Guiding Coalition. Second, Respondent objects to the ALJ's conclusion that Respondent violated Sections 8(a)(1) and (5) of the Act. Third, Respondent objects to the ALJ's

Order for Respondent to cease and desist dealing with the Guiding Coalition as a representative

of its employees.  Fourth, Respondent objects to the ALJ's Order granting relief to Petitioner, for

the same reasons set forth in Respondent's first three objections.

## II.   ANALYSIS

Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j)(the "Act"), entitled

'Injunctions,' reads as follows –

> The Board shall have power, upon issuance of a complaint... charging that any person has
> engaged in or is engaging in an unfair labor practice, to petition any district court of the
> United States ... for appropriate temporary relief or restraining order. Upon the filing of
> any such petition the court shall cause notice thereof to be served upon such person, and
> thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining
> order as it deems just and proper.

(emphasis added).

The Court must apply a two-prong test to determine whether a request for §10(j) relief

should be granted – (1) whether there is "'reasonable cause' to believe that the defendant has

committed the unlawful labor practices alleged, and (2) whether injunctive relief would be 'just

and proper'" under the circumstances. Pye v. EXEL CASE READY, 238 F.3d 69, 72 (1st Cir.

2001) (citing Asseo v. Centro Medico del Turbado, Inc., 900 F.2d 445, 450 (1st Cir. 1990)).[3]

Under this analysis, the district court is not the "ultimate fact-finder, but merely determines what

facts are 'likely to be proven' to determine if the standard for an injunction has been met." Pye,

238 F.3d at 71 n. 2 (quoting Asseo v. Pan Am. Grain Co., 805 F.2d 23, 25 (1st Cir. 1986)).

---

[3] The First Circuit has opined that the reasonable cause inquiry "may be superfluous given that the 'just and
proper' prong of the standard requires that the claim have a 'substantial likelihood of success on the merits.'" Pye,
238 F.3d at 72 n. 5 (quoting Pye v. Sullivan Bros. Printing Inc., 38 F.3d 58, 64 n.7 (1st Cir. 1994)).  The Court
nevertheless applies the traditional two-part test in this case.

**(1)**     **Reasonable Cause Analysis**

Under the first prong of this analysis, the Court does not decide the merits of the case. Rather, the Court is charged "only with the responsibility of ensuring that there is reasonable cause to believe that a violation of the NLRA occurred." Asseo, 900 F.2d at 450. Reasonable cause is established "through a determination that the Regional Director's position is fairly supported by the evidence." Id. Here, the Court may conclude that reasonable cause exists only if it finds that the Regional Director's determination that Respondent was and is engaging in unfair labor practices is fairly supported by the evidence.

**a.**     **Reasonable Cause for Section 8(a)(1) Violation**

Section 8(a)(1) states that it is unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." Petitioner contends that there is reasonable cause to believe that Respondent, through Nicholas Griseto, unlawfully coerced and interrogated its employees. Petitioner alleges that this coercion began as early as the Jaunary 5, 2009 orientation program where Griseto told employees that he did not think a union was necessary. Petitioner also contends that Respondent violated Section 8(a)(1) by posting the February Memo with the purpose of soliciting employees to abandon support for UNITE-HERE.

While ALJ Green did not find that the February Memo violated 8(a)(1), ALJ Green nevertheless concluded that Respondent violated 8(a)(1) by creating and maintaining the Guiding Coalition and refusing to bargain with UNITE-HERE. Based upon the facts contained in the administrative record, the Court finds that Petitioner has established that there is reasonable cause to believe that Respondent violated Section 8(a)(1) of the Act.

###### b.   Reasonable Cause for Section 8(a)(2) Violation

Section 8(a)(2) states that it is unfair labor practice for an employer to "dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it..." Petitioner contends that there is reasonable cause to believe that Respondent violated Section 8(a)(2) in forming the Guiding Coalition, because the Guiding Coalition was created to deal with wages, hours and other terms of employment, even though the Union was the exclusive collective-bargaining representative.

The Court finds that the Regional Director's conclusion that Respondent established and supported the Guiding Coalition to interfere with the administration of UNITE-HERE is fairly supported by the evidence contained in the administrative record. Petitioner has therefore established that there is reasonable cause to believe that Respondent violated Section 8(a)(2) of the Act.

###### c.   Reasonable Cause for Section 8(a)(5) Violation

Section 8(a)(5) of the Act states that it is unfair labor practice for an employer to "refuse to bargain collectively with the representative of his employees..." Under this standard, "an employer is obligated to recognize and bargain with the union representing its predecessor's employees if: (1) the new employer is a 'successor' to the old, i.e., if there is substantial continuity between the two employing entities; and (2) a majority of the successor's employees previously were employed by the predecessor." Asseo, 900 F.2d at 450-51 (quoting Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27 (1987)). Here, Respondent admits that it is the successor to Bradford Dyeing Association. As the successor, Respondent is bound by the same obligations that bound Bradford Dyeing Association, including bargaining with the Union pursuant to Section 8(a)(5).

The Regional Director's findings that Respondent refused to recognize UNITE-HERE and urged its employees to reject the bargaining representative is fairly supported by the evidence. The Court therefore concludes that there is reasonable cause to believe that Respondent violated Section 8(a)(5) of the Act.

**(2)    Just and Proper Analysis**

Having concluded that the Regional Director had reasonable cause to support the finding that Respondent violated Sections 8(a)(1), (2) and (5) of the Act, the Court's next inquiry is whether an award of injunctive relief is "just and proper." The standard for granting preliminary injunctive relief requires Petitioner to satisfy the familiar four-part test. Petitioner must demonstrate – "(1) a likelihood of success on the merits; (2) the potential for irreparable injury in the absence of relief; (3) that such injury outweighs any harm preliminary relief would inflict on the defendant; and (4) that preliminary relief is in the public interest." Pye ex rel. NLRB, 238 F.3d at 73 n. 7. Petitioner must satisfy each prong of the injunctive relief test to succeed on its Motion for 10(j) Relief. Id. at 74 n. 9.

**a.    Likelihood of Success on the Merits**

First, Petitioner must establish that it is likely to succeed on the merits. Petitioner argues that it is likely to succeed on the merits because the Regional Director issued a Complaint alleging that Respondent was and is engaging in unfair labor practices in violation of Sections 8(a)(1), (2), and (5) of the Act, and ALJ Green reached the same conclusion. ALJ Green concluded that (1) "by creating and maintaining the Guiding Coalition, ... Respondent dominated a labor organization in violation of Section[s] 8(a)(1) and (2) of the Act," and (2) by "withdrawing recognition from and refusing to bargain with the Union," Respondent violated

9

Sections 8(a)(1) and (5) of the Act.

When the interim relief "is essentially the final relief sought, the likelihood of success should be strong." Pye ex rel. NLRB, 238 F.3d at 73 (quoting Pye ex rel NLRB, 38 F.3d at 63)). Here, Petitioner seeks a preliminary injunction requiring Respondent to dismantle the Guiding Coalition, and recognize and bargain with UNITE-HERE. That relief is essentially the same as the final relief sought.

The Court finds that Petitioner has established a strong likelihood of success on the merits for many of the same reasons discussed in the "reasonable cause" analysis above. By establishing that Respondent created and maintained the Guiding Coalition and simultaneously encouraged employees to abandon support for UNITE-HERE, Petitioner has established that it is likely to succeed on the merits of its claims.

### b.    Irreparable Injury

Second, Petitioner must show that it will suffer irreparable injury if the injunction is not granted. Petitioner argues that UNITE-HERE is and will continue to suffer irreparable injury if an injunction is not granted because UNITE-HERE continues to lose negotiating leverage and support based upon Respondent's refusal to recognize and negotiate with the union. Petitioner further argues that if Respondent hires new employees, UNITE-HERE will suffer irreparable injury because it will not be in a position to gain their support.

Refusal to recognize a union "disrupts the employees' morale, deters their organizational activities and discourages their membership in unions." Cohen v. Samuel Bent LLC, 111 F. Supp. 2d 65, 70 (D. Mass. 2000) (quoting Fall River Dyeing Corp. v. NLRB, 482 U.S. 27, 49-50 (1987)). The Court therefore concludes that Petitioner has established that it will suffer

irreparable injury if a preliminary injunction is not granted.

### c.    Injury Outweighs Harm Inflicted on Respondent

Third, Petitioner must establish that absent a preliminary injunction, the injury to Petitioner outweighs any harm the injunctive relief would cause Respondent. Here, Petitioner requests that the Court issue a preliminary injunction directing Respondent to cease and desist its solicitation of employees to abandon union support, its support of the Guiding Coalition, and its refusal to bargain with UNITE-HERE. This hardship is slight in comparison to the potential injury to Petitioner. The Court therefore finds that the balance of the hardships weighs in favor of Petitioner.

### d.    Public Interest

The fourth element requires the Court to consider the effect that the preliminary injunction will have on the public interest. There is no evidence that this preliminary relief will adversely effect the public. Rather, the First Circuit has found that "the public has an interest in ensuring that the purpose of the Act be furthered." Asseo, 805 F.2d at 28. The Court has already concluded that there is reasonable cause to believe that Respondent has and is still violating the Act. Petitioner has also established a likelihood of success on the merits of its claims. The Court therefore finds that granting Petitioner's request for a preliminary injunction will further the public interest.

## III.   CONCLUSION

Having concluded that Petitioner established that there is reasonable cause to believe that Respondent committed the unlawful labor violations, and that injunctive relief would be "just and proper" under the circumstances, the Court finds that Petitioner is entitled to 10(j) relief.

For the aforementioned reasons, Petitioner's Motion for Injunctive Relief is GRANTED.

11

Accordingly, Respondent is ordered to cease dealing with the Guiding Coalition, and upon

request, to bargain collectively and in good faith with UNITE-HERE.

SO ORDERED.

Mary M. Lisi
Chief United States District Judge
June 29, 2010